UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GEORGE L. CHASE,

                Plaintiff,

      -vs-                          07-CV-96-JTC

SADIR J. ALLAWI,

                Defendant.

This action was originally filed in New York State Supreme Court seeking damages for personal injuries allegedly sustained by plaintiff George Chase as a result of an automobile accident involving a vehicle driven by defendant Sadir Allawi. The case was removed to this court pursuant to 28 U.S.C. § 1446 based on diversity of the citizenship of the parties. After substantial discovery, and following a settlement conference conducted by United States Magistrate Judge Leslie G. Foschio, defendant moved for summary judgment dismissing the complaint on the ground that plaintiff has failed to meet the threshold requirements for establishing "serious injury," as defined by New York Insurance Law § 5102(d).

For the reasons that follow, defendant's motion is denied.

## **BACKGROUND**

As alleged in the two-page complaint, on December 25, 2005, plaintiff was driving on Summit Street in Lockport, New York, when his car was struck by a sport utility vehicle operated by defendant. Plaintiff claims that the collision caused serious injury to his spine, requiring surgery (*see* Item 1, Ex. B).

As reflected in the affidavit (Item 35) and narrative report (*id.*, Ex. C) of plaintiff's treating orthopedic surgeon, Dr. Andrew Cappuccino, plaintiff initially refused treatment at the accident scene, but was taken to the Lockport Memorial Hospital emergency room by a family member later that evening when he noted increasing back pain. He was evaluated, treated with pain medication, and released (see Item 35, Ex. C).[1]

He was seen by his primary care physician, Dr. B. Eun Lee, over the course of the next few days, and was sent for X-rays and an MRI of the lumbar spine, which revealed a compression fracture of the L1 vertebra "of indeterminate age" (*see id.*, Ex. F). Dr. Lee referred plaintiff to Dr. Cappuccino, who began treating plaintiff in January 2006. Plaintiff, who was 41 years old at the time of the accident, reported that he injured his back in a fall from a ladder in 1982 (when he was 17 years old), and was treated conservatively in a brace for a fracture of the T12 vertebral body and anterior compression at L1. He wore the brace for two months, returned to work unrestricted, and has worked at manual labor jobs since then with no evidence of deficiency (*see id.*, Ex. C).

Upon examining plaintiff and reviewing the initial MRI, Dr. Cappuccino's impression was post-traumatic, motor vehicle-acquired compression deformity at L1-L2, with kyphotic deformity, as well as suspected spinal canal stenosis and thoracic disc dysfunction. He recommended immobilization in a Jewett brace, MRI of the thoracic spine, and temporary total disability from work. The MRI, which was performed on January 27, 2006, revealed central disc protrusions at T7-T8, T8-T9, T9-T10, T10-T11, and T11-T12, which Dr. Cappuccino found to be causally related to the December 2005 accident given the

---

[1] Dr. Cappuccino's rather lengthy narrative (Item 35, Ex. C) is not paginated.

absence of a prior history of thoracic spine dysfunction (*see* Item 35, ¶ 10). Follow-up visits and further diagnostic radiography revealed persistent, progressive pain and instability in his back, left buttock, and left thigh with no substantial evidence of healing three months post-injury. The options of continued conservative treatment, surgical stabilization, and reconstruction were discussed in depth during the follow-up visit in March (*see id.*, Ex. C).

On April 24, 2006, plaintiff contacted Dr. Cappuccino's office indicating his desire to proceed with elective surgical stabilization due to persistent unresolved pain. As documented in his office notes (*id.*, Ex. B) and operative reports (*id.*, Exs. D, E), Dr. Cappuccino discussed with plaintiff at length the risks and benefits of surgical intervention involving realignment, decompression, and stabilization in a two-stage procedure. Stage One was performed on April 26, 2006, and Stage Two was performed on May 17, 2006. Regular post-operative follow-up indicated slow but steady progress, and in August 2006 plaintiff was referred to a course of physical and occupational therapy and pain management.

Plaintiff was last seen by Dr. Cappuccino in January, 2008, "over 1 ½ years status post major thoracolumbar partial corpectomy and interbody fusion with instrumentation T12 through L2," at which time plaintiff was "doing fairly well." *Id.*, Ex. B. As reported by Dr. Cappuccino:

> At this time it is our feeling that George has reached maximum medical improvement from the aforementioned surgical repair. He does remain at this point with a permanent, marked degree of disability overall in addition to a permanent, total degree of disability from his prior occupation, all of which is causally related to this motor vehicle accident which transpired on 12/25/05.

*Id*.

Meanwhile, this action was filed in state court on September 28, 2006, seeking unspecified damages for "serious injury as defined under New York State Insurance Law § 5102(d)." Item 1, Ex. B, ¶ 4. During discovery, plaintiff submitted to an independent medical examination ("IME") performed on defendant's behalf by Robert M. Lifeso, M.D., F.R.C.S.C., F.A.C.S., a physician and orthopedic surgeon. Based on this examination, as well as his review of the diagnostic films, reports, and other medical records–including the records pertaining to treatment for the compression fracture at T12 and L1 sustained by plaintiff in 1982–Dr. Lifeso submitted an affidavit stating, among other things, the following opinions:

- Plaintiff suffered no spinal injuries in the December 25, 2005 accident.
- The compression fracture of plaintiff's L1 vertebra indicated by the December 2005 X-ray and MRI was pre-existing, traceable to the fall from the ladder in 1982.
- The fracture was fully healed and solidly united prior to the motor vehicle accident and did not require surgical intervention.
- The pre-existing condition was not exacerbated by the accident.

*See* Item 25, Attachment 15.

Defendant also retained Charles E. Bain, B.Eng., M.D., C.C.F.P. (E.M.), an expert in biomechanics, accident reconstruction, and injury causation analysis, to provide an expert opinion "as to whether the forces involved in the subject motor vehicle accident were sufficient to cause the [p]laintiff's claimed injuries." Item 25, Att. 16, ¶ 8. Dr. Bain reviewed the available documentation, including the police accident report, photos depicting damage

to the vehicles, a repair estimate for defendant's 2002 Mercedes Benz ML320, the deposition testimony, and plaintiff's medical records, and provided an expert report dated June 13, 2008, containing the following findings "to a reasonable degree of medical and engineering certainty":

- Plaintiff could not have sustained a compression fracture of his lumbar spine given the forces involved in the collision.
- Plaintiff's T12-L1 compression fracture occurred in 1982 when he fell from the ladder and landed on his feet or buttocks.
- Dr. Cappuccino operated on plaintiff in an effort to correct a spinal deformity that had occurred 23 years prior to the accident at issue.
- Plaintiff did not sustain a serious injury, fracture, or exacerbation of an injury or fracture as the result of the December 25, 2005 accident.

*Id.*, Exs. P, Q.

Relying on these submissions, defendant moves for summary judgment dismissing the complaint on the ground that plaintiff cannot meet the "serious injury" threshold requirement of New York Insurance Law § 5102(d).

## DISCUSSION

**I.  Summary Judgment Standard**

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and the moving party shows that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991).

In reaching a summary judgment determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162,167 (2d Cir. 1991). The moving party bears the initial burden of establishing that there are no genuine issues of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once he does so, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations, however, are insufficient and "[t]here must be more than a 'scintilla of evidence'" to defeat a motion for summary judgment. *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting Anderson, 477 U.S. at 252, 106 S.Ct. at 2512).

The trial court's function at the summary judgment stage "is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Services, Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Keystone Manufacturing Co., Inc. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 549 (W.D.N.Y. 2005).

## II. The "Serious Injury" Threshold Under New York's No-Fault Law

New York's "No-Fault Law" was enacted to promote prompt resolution of personal injury claims resulting from motor vehicle accidents, to limit costs to consumers, and to alleviate burdens on the courts. *Pommells v. Perez*, 4 N.Y.3d 566, 570-71 (2005). Under this statute, a plaintiff is precluded from recovering for non-economic loss (*i.e.*, pain and suffering) resulting from a motor vehicle accident unless the plaintiff can demonstrate that he suffered a "serious injury," defined as: (1) death; (2) dismemberment; (3) significant disfigurement; (4) a fracture; (5) loss of a fetus; (6) permanent loss of use of a body organ, member, function or system; (7) permanent consequential limitation of use of a body organ or member; (8) significant limitation of use of a body function or system; (9) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment. N.Y Ins. Law § 5102(d). "[T]he issue is one for the court, in the first instance where it is properly raised, to determine whether the plaintiff has established a prima facie case of sustaining serious injury." *Licari v. Elliott*, 57 N.Y.2d 230, 237 (1982).

The courts have held that to prevail on a motion for summary judgment to determine this threshold question of law, the defendant has the initial burden to establish a *prima facie* case that the plaintiff has not sustained a "serious injury" as defined by section 5102(d). *See Gaddy v. Eyler*, 79 N.Y.2d 955, 956-57 (1992). In order to meet this burden, the defendant may rely on the medical evidence, including unsworn reports by plaintiff's

treating physicians, *see McGovern v. Walls*, 201 A.D.2d 628, 607 N.Y.S.2d 964, 965 (2d Dep't 1994), or sworn affidavits or affirmations by the defendant's own retained physicians and experts. *See Marsh v. Wolfson*, 186 A.D.2d 115, 115-16, 587 N.Y.S.2d 695, 696 (2d Dep't 1992).

If the defendant makes this *prima facie* showing, the burden then shifts to the plaintiff to defeat the motion by submitting sworn affidavits or affirmations by his physicians that support his claim of serious injury. *See Gaddy v. Eyler*, 79 N.Y.2d 955, 582 (1992); *Rand v. Volvo Fin. N. Am.,* 2007 WL 1351751, at *11 (E.D.N.Y. May 8, 2007). These submissions must contain "quantitative evidence from an expert . . . or an expert's qualitative assessment, based on objective evidence," regarding the nature and extent of the injury. *Clifford v. Burlington Motor Carriers, Inc.*, 2008 WL 268289, at *7 (E.D.N.Y. January 29, 2008); *see also Shamanskaya v. Ma*, 2009 WL 2230709, at *5 (E.D.N.Y. July 24, 2009). Assessments or opinions based on subjective complaints of pain alone are insufficient to meet the serious injury threshold. *Toure v. Avis Rent A Car Systems, Inc.*, 98 N.Y.2d 345, 350 (2002); *see also Eldred v. Stoddard*, 217 A.D.2d 952, 953, 630 N.Y.S.2d 171, 171 (4th Dept. 1995). In addition, the New York Court of Appeals has concluded that, "even where there is objective medical proof, when additional contributory factors interrupt the chain of causation between the accident and claimed injury–such as a gap in treatment, an intervening medical problem or a preexisting condition–summary dismissal of the complaint may be appropriate." *Pommells*, 4 N.Y.3d at 572.

While not specifically set forth in the pleadings, the submissions on record indicate that plaintiff's allegations of serious injury in this case can be categorized under section

5102(d) as either a fracture, a significant limitation of the use of his lumbar and thoracic spine, or a medically determined injury or impairment which prevented him from performing substantially all of his customary daily activities for 90 of the first 180 days following the accident. Addressing each of these categories, defendant contends that the IME report and affidavit of Dr. Lifeso establish that the T12 and L1 compression fracture surgically treated by Dr. Cappuccino was not sustained as a result of the December 25, 2005 accident, but instead was a preexisting condition resulting from plaintiff's fall from a ladder in 1982. Dr. Lifeso's opinion was based on his review of the records obtained from Lockport Memorial Hospital, documenting treatment for the compression fracture T12 and L1 suffered in August 1982, as well as the x-rays, MRIs, CT scans, and other medical records documenting treatment subsequent to the December 2005 accident. According to defendant, Dr. Lifeso's conclusions are confirmed by the report and affidavit of Dr. Bain, defendant's accident reconstruction and causation expert, in which Dr. Bain states the opinion that, given the minimal forces present during the December 25, 2005 accident, it was not physically possible for plaintiff to have sustained a compression fracture at T12 and L1, or exacerbation of the documented pre-existing fracture, which would require the extensive surgical intervention performed by Dr. Cappuccino.

  Assuming for the purposes of determining defendant's motion that these expert submissions suffice to establish a *prima facie* case that plaintiff has not sustained serious injury within any of the categories defined by section 5102(d), the burden shifts to plaintiff to come forward with specific objective evidence in support of his claims. In this regard, Dr. Cappuccino's detailed affidavit and treatment narrative, amply supported by his meticulous office notes and operative reports, clearly sets forth his sworn assessment as

plaintiff's treating orthopedic surgeon that plaintiff suffered medically determined injuries to his thoracic and lumbar spines which were causally related to the December 25, 2005 motor vehicle accident. This assessment is based upon his direct physical examination of plaintiff on several occasions both prior and subsequent to the significant surgical intervention, as well as his review of the various diagnostic x-rays, MRIs and CT scans taken during the course of treatment. As stated by Dr. Cappuccino:

> After extensive review of all of the radiographs from my office, pre-and post-surgical scanning as well as MRI of the thoracic and lumbar spine . . . , it is readily apparent that although he sustained a low back injury documented at Lockport Memorial Hospital on one lumbar radiograph in [1982], he was able to be productive and return to work fully and uneventfully. He had no other documented episodes of back pain, instability, radiating leg pain, or mid-thoracic pain. Extensive review of the whole medical record shows no evidence of this. There is no evidence of any escalation of back pain, neurological radiation, or escalated thoracic pain until the motor vehicle accident of December 25, 2005.

Item 35, ¶ 17.

Plaintiff also relies on the affidavit of Dr. Jerry J. Tracy III (Item 34), who has treated plaintiff for pain management at the Gosy & Associates Pain Treatment & Neurology Clinic since August 2006. In Dr. Tracy's opinion, plaintiff's conditions–described as "failed back syndrome, postlaminectomy syndrome lumbar region, pain low back/lumbago, radiculitis/neuritis thoracic/lumbar, and myofascial pain syndrome"–are causally related to the December 25, 2005 motor vehicle accident. *Id.* at ¶¶ 8, 10. Dr. Tracy also states:

> [T]he quantitative effects of this injury upon plaintiff's function are medically significant in terms of his ability to perform his normal activities of daily living and to return to his prior employment as a landscaper. It is my opinion, that the prior injury to his spine when he was 17 years old did not restrict his activities for employment or of daily living and that the [plaintiff]'s loss of range of motion and positive objective findings are all causally related to the December 25, 2005 motor vehicle accident.

> [B]ased on all the foregoing, it is my opinion that [plaintiff] suffered a medically determined injury of a nonpermanent nature which prevented him from performing substantially all of his normal activities of daily living for not less than 90 of the first 180 days following the collision and a significant limitation of use in respect to the musculoskeletal system of his lumbar and thoracic spine.

*Id.* at ¶ ¶ 11-12.

According to defendant, these submissions fail to raise genuine issues of material fact sufficient to overcome the findings of Drs. Lifeso and Bain that plaintiff's T12 and L1 compression fracture was not causally related to the accident at issue, and that Dr. Cappuccino's treatment addressed a pre-existing condition. Defendant contends that the opinions expressed in the affidavits of Drs. Tracy and Cappuccino were made without a full and adequate review of plaintiff's prior medical records, particularly the medical records from Lockport Memorial Hospital documenting not just the treatment for the fracture sustained in the August 1982 incident but also an extensive history of subsequent hospital visits that might have contributed to the pre-existing condition, thereby compromising the treating physicians' ability to causally connect plaintiff's injuries to the December 2005 accident.

Based upon the court's review of the record submitted on defendant's motion, these contentions must be rejected. As indicated by the discussion above, the opinions expressed by Dr. Cappuccino and Dr. Tracy regarding the nature, extent, and cause of plaintiff's spinal injuries are based on their well-documented, direct observations of plaintiff during the course of long-term medical treatment. These opinions and observations are supported by the objective evidence, including the reports of several diagnostic imaging procedures. Clearly, and not unexpectedly, Dr. Cappuccino's interpretation of the imaging

reports is at odds with Dr. Lifeso's interpretation. However, this court's role at the summary judgment stage is to identify disputed issues of material fact, not to resolve them.

The materials on record also reveal that, in formulating the opinions expressed in his affidavit and narrative, Dr. Cappuccino reviewed the available medical evidence pertaining to plaintiff's treatment at Lockport Memorial Hospital following his fall from a ladder in 1982, including the report of the August 21, 1982 lumbar spine x-ray showing a T12 and L1compression fracture (*see* Item 25, Ex. 9). Dr. Cappuccino explained that, upon extensive review of the whole medical record, it was readily apparent that plaintiff was able to return to productive work after treatment, with no further episodes of back problems until the December 2005 accident. As he explained in his treatment narrative:

> It is my belief that the injuries I treated him for, including his wedge fracture of the L1-L2 level, was exacerbation [sic] and destabilized by his motor vehicle accident. There was a remote history of compression fracture in this region. The plain radiographs were not available. They had been destroyed. This predated his injury by 24 years. In the intervening 24 years since the accident at age 17, he was able to work manual labor full time and unrestricted. Clearly, significant change was noted immediately after his motor vehicle accident. It is my belief that the injuries to his thoracolumbar junction, as well as the multiple disc herniations in his lumbar spine, were clearly and causally related to his motor vehicle accident.

Item 32, Ex. C.

In the court's view, this assessment adequately addresses defendant's argument regarding plaintiff's pre-existing condition. *See, e.g., Style v. Joseph*, 32 A.D.3d 212, 214, 820 N.Y.S.2d 26, 28 (1st Dept. 2006) ("Where, as here, plaintiff sustained injuries as a result of accidents or incidents that preceded the accident giving rise to the litigation, plaintiff's expert must adequately address how plaintiff's current medical problems, in light of her past medical history, are causally related to the subject accident.") (citing cases).

Based on this analysis, the court finds that plaintiff has come forward with sufficient objective evidence to raise a genuine issue of material fact for trial with respect to his claim that he suffered "serious injury" causally related to the December 25, 2005 accident in the form of either a fracture, a significant limitation of the use of his lumbar and thoracic spine, or a medically determined injury or impairment which prevented him from performing substantially all of his customary daily activities for 90 of the first 180 days following the accident. Accordingly, plaintiff has established a *prima facie* case of sustaining serious injury within the meaning of New York Insurance Law § 5102(d), as a matter of law, and defendant is not entitled to summary judgment dismissing the complaint.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment (Item 23) is denied. The case is referred back to Magistrate Judge Foschio for a further settlement conference. The parties are directed to contact Judge Foschio's chambers for scheduling.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: March 22 , 2010
p:\pending\2007\07-96.feb24.10